**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| LOUIS SEAN BODWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-cv-02965-HEA |
| | ) |
| STAN PAYNE, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Louis Sean Bodway for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will order plaintiff to file an amended complaint within thirty days.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is a pro se litigant who brings this civil action pursuant to 42 U.S.C. § 1983. At the time relevant to this complaint, he was incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. His complaint names the following defendants: Warden Stan Payne; Dr. Karen Duberstein; Sergeant John Doe; Correctional Officer Jane Doe; CCW II Jason Pullium; Nurse Practitioner Jane Doe; Dr. Ruanne Stamps; and Deputy

Division Director Cindy Griffith. Defendants are sued in both their official and individual capacities.

Plaintiff states that on April 23, 2018, ERDCC "staff opened [his] cell…for another inmate to rob" him. (Docket No. 1 at 5). Plaintiff states that video footage showed this inmate exiting his cell with a "trash can full of property." Approximately two hours later, plaintiff alleges that his cell was opened again, and this inmate "assaulted" him by knocking him down, stomping on him, and breaking his hand. According to plaintiff, this inmate assaulted him again just minutes later, "in plain view of several staff members." This assault was caught on camera. However, plaintiff asserts that CCW Pullium refused to preserve the video evidence.

Sergeant John Doe placed plaintiff into administrative segregation and ordered a correctional officer to give him a violation for fighting. Plaintiff claims that Sergeant Doe did this to "bury their gross negligence."

On April 24, 2018, plaintiff showed Officer Jane Doe his right hand, which was "solid black," swollen, and "obviously broken." He states that "even a layperson would recognize the need for medical care." Plaintiff self-declared a medical emergency and told Officer Jane Doe that his hand was broken. (Docket No. 1 at 5-6). He also told Officer Jane Doe that he was in pain and needed to go to the hospital. (Docket No. 1 at 6). Plaintiff alleges that Officer Jane Doe denied him "access to care" and told him he was not having a medical emergency.

Plaintiff acknowledges that he saw a nurse the next day. The nurse allegedly told Dr. Duberstein that plaintiff's hand was "obviously broken." However, plaintiff claims that the nurse's request that he be taken to an outside hospital was ignored.

The following day, plaintiff was taken to the ERDCC medical unit. Nurse Practitioner Jane Doe ordered his hand to be x-rayed and verified that it was broken. However, plaintiff claims that

Nurse Practitioner Jane Doe "refused to administer any pain medicine," refused him medical treatment, denied him "urgent care," and denied him "transfer to an outside hospital."

Plaintiff states that he sent "numerous requests" to Warden Payne, ERDCC Investigator Cindy Slinkard, and Dr. Duberstein, "begging for medical care." (Docket No. 1 at 7). However, all his requests "were ignored."

Subsequently, plaintiff alleges that an "administrative cover-up" occurred. Seven days after injuring his hand, plaintiff states that his medical score was lowered and that he was transferred to Algoa Correctional Center. He notes that he was transferred to Algoa even though he was scheduled to have surgery on his leg, and that Algoa Correctional Center does not have an infirmary "capable of administering I.V. meds."

Plaintiff states that after three months of "being denied any/all treatment [and] pain relief," he was allowed to have orthopedic surgery on his hand. The surgery took place on July 12, 2018. Plaintiff asserts that the surgery "was extensive and complicated," because his broken bones had healed improperly and needed to be rebroken.

Following surgery, plaintiff asserts that he was denied "rehab or physical therapy" by Dr. Stamps, "resulting in the loss of full range of motion and limited use of [his] primary hand." (Docket No. 1 at 8). Plaintiff notes that the orthopedic surgeon sent him back to his institution with instructions "that physical therapy would be necessary for recovery to be successful."

Plaintiff contends that the handling of his injury by Missouri Department of Corrections and Corizon officials amount to deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. He states that he has "suffered severely and lost partial use of [his] dominant hand." (Docket No. 1 at 9). Plaintiff requests the appointment of counsel to prosecute his case. He is also seeking money damages "to be determined by a jury."

4

**Discussion**

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs in violation of the Eighth Amendment. For the reasons discussed below, plaintiff will be directed to file an amended complaint.

A. **Deficiencies in Complaint**

There are deficiencies in plaintiff's complaint that subject his claims to dismissal. To begin, despite suing all defendants in their official capacities, he has not alleged any official capacity claims. An official capacity claim against an individual is actually a claim against the governmental entity that employs that individual. *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). However, plaintiff has not made any allegations against the Missouri Department of Corrections or Corizon. *See Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"); and *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

Plaintiff has also failed to state individual capacity claims against the named defendants. For instance, plaintiff accuses CCW Pullium of refusing his request to preserve video evidence, and Sergeant John Doe of putting him into administration segregation. However, he neglects to allege any facts demonstrating that either of these actions were violative of plaintiff's constitutional rights. *See Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016) ("To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States"). As to Warden Payne and Dr. Duberstein,

plaintiff states only that they "ignored" his requests for medical care. There is no indication, though, as to when plaintiff sent the requests, whether they were ever received, and how their purported failure to respond constituted deliberate indifference. In short, he has not shown that these two defendants were responsible for an alleged constitutional deprivation. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (explaining that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Similarly, plaintiff claims that Dr. Stamps denied him physical therapy, without providing any factual support as to why this refusal constituted deliberate indifference. With regard to defendant Cindy Griffith, plaintiff does not present any allegations whatsoever.

Finally, with regard to the fictitious parties, plaintiff is required to present allegations in his complaint that are "specific enough to permit the identity of the party to be ascertained after reasonable discovery." *See Estate of Rosenberg by Rosenberg v. Crandell*, 56 F. 3d 35, 37 (8th Cir. 1995). Here, however, plaintiff states only that the identity of the fictitious defendants will be easily discoverable.

Because the deficiencies in the complaint are potentially curable, and because plaintiff is proceeding pro se, he will be allowed to amend his complaint according to the instructions set forth below.

### B. Amendment Instructions

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible. In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. *See* Fed.

6

R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should fill out the complaint form in its entirety.

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

The amended complaint should only include claims that arise out of the same transaction or occurrence. In other words, plaintiff should only include claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

In structuring his amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant. That is, for each individual defendant, he should first identify the defendant, and then provide factual allegations against that specific person.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell*, 909 F.2d at 1208 (stating that § 1983 liability "requires a causal link to, and direct responsibility for,

7

the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

The Court notes that plaintiff's original complaint contained multiple defendants. If the amended complaint contains multiple defendants, it is important that he establish the responsibility of each separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group. Rather, plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. Plaintiff will be given **thirty (30) days** in which to submit his amended complaint. Failure to comply with this order will result in the dismissal of this action without prejudice and without further notice.

### C. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, plaintiff is being directed to file an amended complaint. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-form in accordance with the instructions set forth above within **thirty (30) days** of the date of this order.

**IT IS FURTHER ORDERED** that if plaintiff fails to comply with this order this action will be dismissed without prejudice and without further notice.

**IT IS FURTHER ORDERED** that upon the filing of plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 7th day of May, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE